## WILLIAM W. CONOVER

*v.*

## ELISHA RUCKMAN et al.

R. loaned his own money, taking a bond and mortgage as security therefor, in the name of his wife, and having the mortgage recorded without making any other delivery thereof to his wife, which appears to have been one of a number of transactions avowedly done, with the knowledge of the wife, to hinder creditors.—*Held*, that such transaction cannot be upheld as a gift against the creditors of the husband who have liens by judgment or attachment.

*Mr. C. Robbins*, for complainant.

*Mr. J. Weart*, for defendant Mrs. Ruckman.

BIRD, V. C.

This suit was instituted by the complainant, a creditor of the defendant, Elisha Ruckman, to obtain the aid of this court in enforcing the lien of an attachment.

On the 1st day of August, 1877, John Doran and wife executed to Margaret Ruckman a mortgage, to secure the payment of $3,000, then loaned to him by Elisha Ruckman, which mortgage was then delivered to him or to his attorney, was left at the clerk's office to be recorded, was recorded and afterwards passed into the actual possession of Elisha Ruckman. The money so loaned was his.

It is alleged that this mortgage was taken in the name of the wife with the intent of cheating and defrauding the creditors of the husband.

But Mrs. Ruckman claims this mortgage and the money due upon the decree and realized under the execution issued thereon. She has answered separately. She denies the validity of the complainant's claim; denies his right to attach money due on a decree of this court; denies that he has acquired any lien under the attachment; denies that these particular moneys can be at-

tached at the suit of a creditor of the husband, since this court has decreed in another suit that these moneys belong to her; and denies that there was any fraud which this complainant can lay hold of to deprive her of them.

The foundation of the complainant's claim is a note for $600, given to Robert Allen, Jr., by Elisha Ruckman, dated February 4th, 1880. The attachment was issued May 27th, 1880. Mrs. Ruckman called Mr. Allen as a witness; he said this note was given to him for professional services rendered to Elisha Ruckman, naming several matters in which he was employed, showing no inconsiderable amount of work. I think, as the testimony stands, this note was a binding obligation to the parties thereto. It follows that it can be enforced by any *bona fide* holder against the maker or his estate. The complainant held a note for a large amount against Mr. Allen; he took the Ruckman note in part payment, giving credit for the amount due on it to Mr. Allen by endorsement. I am not aware of any legal principle which declares that such a transaction shall not be upheld.

That a writ of attachment may be lawfully served on an officer holding moneys arising from a sale pursuant to a decree of this court, was settled in the case of *Conover* v. *Ruckman, 6 Stew. Eq. 303*.

That the requirements of the statute regulating proceedings in attachment were substantially complied with in the service of the writ on the officer and against the funds in question, I think is well established by the testimony. The coroner who served the process says he served it on the sheriff twice; the first time, he thinks, the money referred to in the return had not been paid to him; this was about half-past ten in the morning; the second service was about an hour afterwards; Mr. Neafie assisted him at both services; on the second service the money had been paid to the sheriff and was in his hands; the writ was not returned until after it had been served the second time; he was under the impression that the payment to the sheriff had been made by the check of Mr. Allen; the sheriff told him when he served the writ the second time that he had the money; that he had a check for the money. In these statements he is fully corroborated by

John Neafie, who assisted in executing the attachment, and also by the sheriff, who held the money sought to be reached.

As to the effect of the decree in the foreclosure suit on these moneys in determining the title, suffice it to say that this complainant was not a party thereto, and cannot be bound.

Can Mrs. Ruckman hold these moneys against the creditors of her husband under this attachment? The facts will shed all the light required to reach a proper conclusion. John Doran, the mortgagor, says that he borrowed the money of Mr. Ruckman; that he had nothing to do with Mrs. Ruckman in the matter; that the first her name appeared was when the mortgage was drawn; she was not present; he paid the interest every six months to Mr. Ruckman, who gave receipts therefor in his own name; Mrs. Ruckman found no fault until about the time this foreclosure suit was commenced; he repeatedly heard Mr. Ruckman say the money was his; in the month of December, 1879, he heard Mrs. Ruckman say (in a suit for divorce) that the money was Mr. Ruckman's; he heard Ruckman speak of placing his property in his wife's name to avoid the Parker and Bergholz judgments; he said he had put it in her hands to keep them from getting hold of it; in that statement he referred to this $3,000.

In these statements, except as to what Mrs. Ruckman said, Mr. Doran is sustained by his wife. Edmond Stephens was present during the progress of the suit for divorce in New York, and heard Mrs. Ruckman say that this Doran mortgage was in her name, but that the money belonged to her husband. The wife of the last witness so understood Mrs. Ruckman also.

Mrs. Ruckman was sworn in her own behalf. She said the money loaned on the Doran mortgage was her husband's; she said that mortgage was never delivered to her by her husband, nor by Doran; she knew, at the time of the execution of these and other papers, that her husband was involved in litigation, resisting very large claims; and that he had declared that he would never pay them. Some of these claims are unpaid.

I think, where the interests of creditors are at stake, as in this case, it is safe to say that no right, title or interest passed to

the grantee in such a transaction. According to Mrs. Ruckman's own statement, there was no delivery. Therefore, the title never passed to her. It is true, it was drawn in her name and recorded; but more was necessary to effect a delivery and pass title. *Jones on Mortgages* § 539; *Jacobus* v. *Mutual Benefit Life Ins. Co.*, 12 C. E. Gr. 604. I think this case, as now made, is wholly unlike the one of *Ruckman* v. *Ruckman*, 5 Stew. Eq. 259. The testimony of Mrs. Ruckman in her divorce suit, as given by the Stephenses in this, shows she never accepted the mortgage. Then, certainly, the law will not compel her to become the recipient (*3 Washb. on Real Prop. 284, 285*) in order to prevent a creditor from recovering the amount of his judgment.

But, if there was an effectual delivery, the purpose being to hinder and delay creditors, not simply to make a fair settlement of a portion on the wife, and the wife having knowledge of that purpose and also of the situation of the husband's affairs, I do not understand that the gift can be sustained. I think the law would be most lame and impotent, were such a transaction to be upheld against any creditor, existing at the time or subsequent, showing himself in other respects within the rule. The law in such case must of necessity let in the subsequent creditor, or fix its seal of approbation on open and defiant fraud. Of course, I would distinguish between the honest and dishonest transfer. *Claflin* v. *Mess*, 3 Stew. Eq. 211; *Conover* v. *Ruckman*, 6 Stew. Eq. 303.

If I am correct in my conclusions that there was no actual valid gift, or that if there was, then there was such fraud as to affect the donee, the court will be slow to hear her on the technical points above considered, against a creditor who is here with his lien by judgment or attachment.

I will advise a decree in accordance with these views, with costs.